UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| REBECCA DAVIS AND RONNIE DAVIS | CIVIL ACTION NO. 18-1568 |
| VERSUS | JUDGE DONALD E. WALTER |
| JAMES GAVIN, ET AL. | MAGISTRATE JUDGE HORNSBY |

---

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by Defendant, Parish of Caddo ("the Parish"). See Record Document 40.[1] The motion is opposed by the Plaintiffs, Rebecca Davis ("Davis") and Ronnie Davis (collectively "the Plaintiffs" or "the Davises"). See Record Document 48. Also before the Court is a Motion for Partial Summary Judgment filed by the Plaintiffs. See Record Document 42. The motion is opposed by the Parish. See Record Document 50. For the reasons assigned, the Parish's motion (Record Document 40) is **GRANTED**, and the Plaintiffs' motion (Record Document 42) is **DENIED**.[2]

### BACKGROUND INFORMATION

Davis was previously employed by Caddo Parish Sewerage District No. 2 ("the Sewerage District") as its office manager. See Record Document 21 at ¶ 5. She alleges that James Gavin ("Gavin"), the former Chairman of the Sewerage District Board, was her immediate supervisor.

---

[1] The Parish has also adopted the arguments, pleadings, and exhibits of its codefendant, the Sewerage Board District No. 2 ("Sewerage Board"), found in Record Documents 45, 51 and 71. See Record Documents 90 and 94. The Sewerage Board and the individually named Sewerage Board members reached a settlement agreement with the Plaintiffs following mediation and will presumably be voluntarily dismissed from the case. See Record Document 84.

[2] The Court has only examined the portion of the Plaintiffs' motion concerning the Parish. The remainder of Plaintiffs' motion is **DENIED AS MOOT** because it relates to those claims resolved during mediation.

See id. Davis contends that around April or May 2015, Gavin began a systematic pattern of harassment and sexual harassment against her, including the use of sexually offensive terms, an unsolicited sexual touching, an invitation to a motel, stalking, and requests to perform personal errands. See id. at ¶ 6. Davis maintains that she reported Gavin's behavior to the Sewerage District Board and the Parish to no avail. See id. at ¶ 7. Instead, Davis states that Gavin retaliated against her by making allegations of poor work performance, installing security cameras to monitor her in the office, and making unfounded criminal complaints against her for theft and malfeasance. See id. at ¶¶ 7-9. Davis alleges that on May 31, 2018, she was summarily terminated from her position. See id. at ¶ 9.

Davis filed suit against the Sewerage District, the Parish acting through the Caddo Parish Commission ("the Commission")[3], former Sewerage Board Chairman Gavin, replacement Sewerage Board Chairman Steven Barras, Sewerage Board Vice-Chairman Lasonia Hayley, and Sewerage Board member Diann Adams. See id. at ¶ 4. Davis asserts the following claims: (1) equal protection, (2) substantive due process, (3) sexual harassment and retaliation under Title VII, (4) Louisiana employment discrimination, (5) malicious prosecution, (6) sexual assault, (7) defamation, (8) intentional infliction of emotional distress, and (9) battery. See id. at ¶¶ 11-27. Ronnie Davis also asserts a claim of loss of consortium, society, and affection. See id. at ¶ 32.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury

---

[3] The Parish answers that although the Commission is the legislative body for the Parish, it has limited power and authority under the home rule charter. See Record Document 23 at ¶ 4. As such, the Parish answers that it is the correct juridical entity. See id.

could return a verdict for the nonmoving party." Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party succeeds, the onus shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324. The court must draw all reasonable inferences in favor of the nonmoving party and refrain from making credibility determinations or weighing the evidence. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). However, a party cannot defeat summary judgment with only conclusory allegations, unsubstantiated assertions, or a mere "scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Additionally, summary judgment is appropriate when the only issue before the court is a question of law. See Int'l Ass'n of Machinist & Aerospace Workers, Dist. 776 v. Tex. Steel Co., 538 F.2d 1116, 1119 (5th Cir. 1976).

## LAW AND ANALYSIS

**I.    Davis's Title VII claims against the Parish.**

The Parish moves for summary judgment of Davis's Title VII claims, arguing that it is a separate and independent legal entity from the Sewerage District, and therefore, cannot be held liable as an employer of Davis. See Record Document 40-2 at 3-5. Conversely, Davis moves for partial summary judgment, requesting that the Court find that the Sewerage District is an

agent of the Parish, such that the Parish and/or the Commission may be found to be an "employer" of Davis as that term is defined by Title VII. See Record Document 42 at 2.

### A. Relationship between the Sewerage District, the Parish, and the Commission.

Article VI, Section 19 of the Louisiana Constitution (1974) states that the legislature "may create or authorize the creation of special districts, boards, agencies, commissions, and authorities of every type, define their powers, and grant to the special districts, boards, agencies, commissions, and authorities so created such rights, powers, and authorities as it deems proper, including, but not limited to, the power of taxation and the power to incur debt and issue bonds." See La. Const. art. VI, § 19. Consistent with this provision, Louisiana law provides that police juries may create sewerage districts composed of territory outside the corporate limits of existing municipalities. See La. R.S. § 33:3881(A). Louisiana law also provides that, once created, sewerage districts shall have certain powers, as follows:

> *Sewerage districts created under this Sub-part shall constitute public corporations, and as such shall have all powers of public corporations, including perpetual existence; the power to incur debt and contract obligations; sue and be sued; to have a corporate seal; to do and perform all acts in their corporate capacity and in their corporate names, which are necessary and proper for the purpose of constructing and maintaining sewers and sewerage disposal works within their territorial limits*; and generally to perform any and all acts and duties necessary to carry out the objects and purposes of their creation. These sewerage districts may expropriate property for the purpose of acquiring rights of way for the laying and installing of sewers and sewerage disposal works, and may acquire machinery, tools and equipment, essential to the proper accomplishment of the purposes of their creation.

See La. R.S. § 33:3885 (emphasis added).

On September 11, 1958, the Parish, through its legislative body at the time (the Caddo Parish Police Jury)[4], established Caddo Parish Sewerage District No. 2 "by the virtue of the

---

[4] "The Caddo Parish Commission was established December 10, 1984, after voter approval of the Home Rule Charter for Caddo Parish on April 7, 1984. The Commission replaced the

4

authority conferred by Sub-Part A, Part I, Chapter 9, Title 33 of the Louisiana Revised Statutes of 1950 ….." See Record Document 40-4 at 7-8. In creating the Sewerage District, the Police Jury noted that it "shall constitute a public corporation and political subdivision of the State of Louisiana, and as such, shall have all the rights, powers and privileges conferred by the Constitution and Statutes of the State of Louisiana, including the authority to incur debt, to issue bonds and to levy taxes and assessments." See id. at 8; see also Caddo Parish Ordinances, § 44-452.

Police juries are required to appoint property taxpayers residing within a newly created sewerage district's boundaries to serve as the board of supervisors. See La. R.S. § 33:3887(A). The Parish ordinances further provide that the Commission "shall appoint five property taxpayers residing within the district to serve as the board of supervisors" for the Sewerage District. See Caddo Parish Ordinances, § 44-455. Additionally, it is the responsibility of the Commission to vote to remove a board member from their position before the end of their term, if necessary. See Record Document 42-5 (Johnson Dep.) at 17.[5]

The Parish argues that it and the Sewerage District are separate legal entities. See Record Document 40-2 at 3. In support, the Parish directs the Court to Johnson v. Sewerage Dist. No. 2 of the Parish of Caddo, 239 La. 840, 120 So.2d 262 (La. 1960), a case that considered whether the Board of Supervisors for the Sewerage District or the Caddo Parish Police Jury was the legal governing authority. See id. at 849. In Johnson, property owners had challenged the Sewerage Board's authority to hold an election to obtain consent or disapproval of proposed ad valorem tax

---

Caddo Parish Police Jury, which was established January 18, 1838." See Record Document 86-3 (Comprehensive Financial Report) at 9.

[5] The testimony of Commissioner Lyndon B. Johnson reveals that, in practice, the elected Commissioner serving the population of a given area recommends potential board members and the Commission votes on their appointment. See Record Document 42-5 (Johnson Dep.) at 98.

bonds for the construction and maintenance of sewage equipment, arguing that the Police Jury was the legal governing authority, and only it could hold an election. Id. at 847. The district court that initially heard the case held that the election was null and void under an unrepealed Louisiana statute, noting that the statute provided that the Police Jury was the governing authority and appropriate party to call for a tax bond election, not the Sewerage Board. Id. at 846-48. On appeal, the Louisiana Supreme Court reversed after finding that the statute relied upon by the district court had been superseded, and noted that the legislative intent was "crystal clear" that sewerage districts have only one governing authority, stating: "[w]e again find the plain and unambiguous intent and purpose of the legislature that the Board of Supervisors, and not the Police Jury, should henceforth be the governing authority of the sewerage districts." Id. at 855-56.

The Court also finds a case from the Louisiana Fourth Circuit Court of Appeals instructive. In David v. Cajun Contractors, Inc., 572 So.2d 713 (La. App. 4 Cir. 1990), the court examined whether a sewerage district was a separate entity from the St. Bernard Police Jury after a citizen filed suit against both entities for property damages allegedly caused by piledriving during the construction of a sewage treatment plant. See id. Relying on La. R.S. § 33:3885, discussed above, the Louisiana Fourth Circuit Court of Appeals found that the sewerage district was a distinct legal entity from the police jury, such that the police jury could not be held liable for damages caused by the sewerage district's construction project. See id. at 715.

The determination of whether the Sewerage District and the Parish are distinct legal entities is a question of law appropriate for summary judgment. In light of the plain language set

6

forth in La. R.S. § 33:3885 and the rulings in Johnson and David, the Court finds that the Parish and the Sewerage District are legally distinct entities.[6]

**B.      Whether the Parish may be held liable as Davis's employer under Title VII.**

Title VII prohibits employers from discriminating against any individual on the basis of that individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a). Only a plaintiff's employer may be held liable under Title VII. See Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n. 8 (5th Cir. 2003). To hold a defendant liable, a plaintiff must prove that the defendant meets Title VII's definition of "employer" and that an employment relationship existed between them. The term "employer" is defined by Title VII in relevant part as: "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year, and any agent of such person…." See 42 U.S.C. § 2000e(b).

For liability to attach against a particular defendant, a plaintiff must prove that an employment relationship existed between her and the named defendant. See Deal v. State Farm Cty. Mut. Ins. Co. of Tex., 5 F.3d 117 (5th Cir. 1993). The basic test to establish whether an employment relationship exists is the "hybrid economic realities/common law control test." See id. at 119. The most important factor is the right to control an employee's conduct, including the right to hire, fire, supervise, and schedule the employee. See id. The economic realities test also considers whether the alleged employer signed the employee's paycheck, withheld taxes, or provided benefits. See id.

---

[6]      See also Roberts v. Sewerage & Water Bd. of New Orleans, 92-2048 (La. 3/21/94); 634 So.2d 341 (the City of New Orleans and the Sewerage and Water Board of New Orleans were treated as separate and distinct juridical entities).

It appears to be undisputed that the Sewerage District was Davis's direct employer, not the Parish. However, even if the parties disputed this point, there is no genuine issue of material fact in controversy. Davis was hired by Gavin to work at the Sewerage District. See Record Document 40-1 at ¶ 2. Her rate of pay, vacation and sick pay, work schedule, and job duties were set by Gavin. See id. at ¶¶ 3-6; Record Document 40-8 at 14-15. Davis testified that she was paid by the Sewerage District with a Sewerage District check, which she wrote herself. See Record Document 42-7 at 53-54. The Parish Human Resources Director, Cheryl McGee, stated in her affidavit that the Parish has never employed Davis. See Record Document 40-5 at ¶ 3. She also testified that Sewerage District employees are not covered by the Parish's personnel policies. See Record Document 40-6 (McGee Dep.) at 18.

The Sewerage District only employed two individuals during the period of time in question, Davis and a part-time secretary. See Record Document 42-4 (Gavin Dep.) at 21-22. This is fewer than the fifteen employees necessary to maintain a case under Title VII. However, there are certain instances where a plaintiff may impose liability on an entity other than her direct employer, whose employees may also be counted to reach the fifteen-employee minimum. One such circumstance exists where "superficially distinct corporate entities" are found to represent "a single, integrated enterprise: a single employer." See Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983). To determine whether such a circumstance exists, a court must consider the following factors when examining the entities: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. See id.

However, the Fifth Circuit has noted that this four-factor test "is not readily applicable to governmental subdivisions, for it was 'developed by the National Labor Relations Board to

8

determine whether consolidation of separate *private* corporations is proper in determining the relevant employer for purposes of enforcing the National Labor Relations Act.'" Trevino, 701 F.2d at 404 n. 10 (quoting Owens v. Rush, 636 F.2d 283, 286 n. 2 (10th Cir. 1980) (emphasis in original)). This finding, that the integrated enterprise theory is not readily applicable to governmental subdivisions, has been repeated many times. See Dyas v. City of Shreveport, No. 16-1607, 2017 WL 3711898, at *3 (W.D. La. Aug. 25, 2017). Indeed, the "Fifth Circuit [has] observed that 'our prior case law suggests that a government employer… may not be considered part of an integrated enterprise under the Trevino framework.'" Id. (quoting Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 344 (5th Cir. 2007)).

This Court finds the Dyas case particularly relevant. The Dyas plaintiffs worked for the Shreve Memorial Library, which operates under the supervision of a Library Board of Control. See Dyas, 2017 WL 3711898 at *1. Although the plaintiffs were employed directly by the library, they also filed suit against the City of Shreveport and the Parish of Caddo, arguing that the City and the Parish should also be considered "employers" under Title VII because the City and the Parish are responsible for appointing Library Board of Control members and also provide funding for the library. See id. at *3. After examining these allegations, the Dyas court held that the plaintiffs could not state a claim against the City or the Parish because each is a separate governmental unit, and therefore, could not be held liable under the Trevino framework. See id.

Another circumstance sufficient to allow liability against a separate entity (not the direct employer) is when a defendant is found to be a "joint employer" of the plaintiff. "The existence of such a relationship depends on the control which one employer exercises, or potentially exercises, over the labor relations policy of the other." Texas World Serv. Co., Inc. v. NLRB, 928 F.2d 1426, 1432 (5th Cir. 1991) (quotation omitted). The Fifth Circuit has noted that the

"joint employer" theory is closely related to the "integrated enterprise/single employer" theory, stating that the core analysis of both tests (the amount of control a defendant has over another's labor relations) are "virtually identical." Karagounis v. Univ. of Tex. Health Sci. Ctr. at San Antonio, 168 F.3d 485 at *2 (5th Cir. 1999). As such, the Fifth Circuit has noted that the "joint employer" theory is also subject to the holding in Trevino, making the theory inapplicable to governmental subdivisions. See id.

The Parish argues that it cannot be held liable as a Title VII employer under either theory – the "integrated enterprise/single employer" test or the "joint employer" test. See Record Document 40-2 at 4-5. Based on the case law presented above, this Court agrees with this conclusion. The Fifth Circuit has observed that the theories are inapplicable to governmental entities like the Parish and the Sewerage Board, and therefore, this Court must find that the Parish cannot be held liable as Davis's employer under either theory discussed above.

Davis argues that instead of relying on the "integrated enterprise/single employer" or "joint employer" theories, the Court should find that the Sewerage District is an "agent" of the Commission and the Parish, such that the Parish may be held liable for the acts of the Sewerage Board. See Record Document 42-2 at 2-3. In support, Davis contends that because the Parish created the Sewerage District, it retains general power over "the agency," noting that Article VI, Section 15 of the Louisiana Constitution provides as follows: "The governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency." See id. at 9-10 (citing Louisiana Const. art. VI, § 15). Davis notes further that the Parish Home Charter provides: "[t]he commission shall have general power over any agency heretofore created by the governing

authority of Caddo Parish or hereafter created by the commission including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency." See id. at 10 (citing Caddo Parish Ordinances § 8-08 (a)). Davis also notes that the Commission retains the power to both appoint and remove Sewerage District Board Members, as well as the power to set the per diem rates for the Sewerage District. See id. at 10-11.

Davis also directs the Court to language contained within the Commission's 2018 Financial Report and Budget. See Record Document 86-1 at 3. The Financial Report includes financial information for the Sewerage District as a component unit, which is defined therein as "a generally accepted accounting term" used to denote a "legally separate organization for which the commission is financially accountable." See Record Document 86-3 at 9. The report also states: "The Commission may be financially accountable for Sewerage District 2 as a result of fiscal dependency. The Commission may also impose its will on Sewerage District 2 by significantly influencing programs, projects, or level of service." See id. at 57. Based on all of the information detailed above, Davis contends that the Sewerage District is "an agent and creature of the Parish of Caddo acting through the Caddo Parish Commission." See Record Document 42-2 at 10.

Davis suggests that the Court follow the analysis found in Owens v. Rush, 636 F.2d 283 (10th Cir. 1980), to find that the Sewerage Board is an agent of the Parish. See Record Document 42-2 at 13. The plaintiff in Owens was an employee of a local Sheriff who claimed that she experienced discrimination in her pay and was subjected to a retaliatory discharge, all in violation of Title VII. See Owens, 636 F.2d at 284-85. As with the case at hand, the plaintiff in Owens alleged that the Sheriff was an agent of the county in an effort to reach the required

11

"fifteen or more employees" threshold necessary to trigger liability as an employer under Title VII. See id. at 286. The district court dismissed the plaintiff's claims after finding (1) that the Sheriff's office did not meet the definition of "employer" under Title VII because it did not employ fifteen or more employees, and (2) that the Sheriff was not an "agent" of the county. Id. at 285. The Tenth Circuit reversed, finding that the Sheriff should be considered an agent of the county because the Sheriff "is elected by the body politic and acts on its behalf in enforcing the state's laws." Id. at 286. Additionally, the Tenth Circuit noted that Title VII "should not be construed to exempt a political subdivision with many employees from Title VII proscriptions on grounds that the immediate employing agent has fewer than fifteen employees." Id. at 287.

Owens unquestionably offers a different analysis of governmental entities that is favorable to Davis. However, this Court cannot rely on its reasoning in reaching its decision because the opinion is not from the Fifth Circuit. The Fifth Circuit is clearly aware of the Owens case because it was cited in the Trevino opinion. See Trevino, 701 F.2d 397 at n. 10. However, to this Court's knowledge, the Fifth Circuit has declined to adopt the reasoning set forth in Owens when examining governmental entities. There is evidence in the record of several instances where Sewerage Board members and/or Davis communicated directly with Caddo Parish Commissioner Lyndon B. Johnson regarding certain matters, including conversations about the allegations of sexual harassment by Gavin. However, because it is clear that the Sewerage District and the Commission are legally distinct entities, any control or involvement by the Commission, the Parish, or Commissioner Johnson with the Sewerage Board with regard to these matters, or the Sewerage District's potential financial dependency on the Commission as suggested in the Financial Report, would necessarily bring the Court back to the Trevino test,

which the Fifth Circuit has said is not applicable to governmental entities.[7] At this time, this Court must follow the direction set forth in Trevino and Karagounis.

Moreover, it does not appear that the Sewerage Board was acting as an "agent" for the Parish as that term has been interpreted by the Fifth Circuit. Rather than the general understanding of the term agent as a person who acts on behalf of another, the Fifth Circuit has held "an agent under Title VII [] must be an agent *with respect to employment practices*." See Deal, 5 F.3d at 119 (emphasis added).[8] After a thorough review of the record, the Court finds that there is no indication that the Commission and/or the Parish delegated any decisions regarding employment to the Sewerage District as its agent. Indeed, the record indicates that it was the Sewerage District, as Davis's direct employer, through the Sewerage Board, that made all of the employment decisions pertaining to Davis, including the decision to terminate her employment.

For these reasons, the Court finds that the Parish cannot be considered Davis's employer for purposes of Title VII, and therefore, cannot be held liable to Davis under Title VII.

**II.    Davis's claims against the Parish pursuant to 42 U.S.C. § 1983.**

Davis has also asserted an equal protection claim against the Parish pursuant to 42 U.S.C. § 1983 based on the Commission's alleged untimely removal of Gavin from his position on the

---

[7]    This finding would also preclude Davis's related argument that the Parish is liable for her sexual harassment claims under Title VII because the Commission had the authority to remove the alleged harasser, Gavin, from the Sewerage Board, but failed to do so in a timely manner. See Record Document 42-2 at 17.

[8]    The purpose of extending the definition of employer under Title VII to include "any agent" was to incorporate the respondeat superior theory of liability into Title VII. See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999). This language was included because Congress did not intend to impose individual liability on employees. See Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir. 1994).

Sewerage Board. The Parish argues that these claims must be dismissed because Davis has failed to set forth the existence of a custom, practice, or policy responsible for her injuries. See Record Document 40-2 at 5-6.

A plaintiff may sue a municipality for violating her constitutional rights "under the color of any statute, ordinance, regulation, custom, or usage" for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws …." 42 U.S.C. § 1983. Sexual harassment in public employment is a violation of the Equal Protection Clause of the Fourteenth Amendment, which is actionable under Section 1983. See Lauderdale v. Tex. Dep't. of Crim. Just., 512 F.3d 157, 166 (5th Cir. 2007). However, a municipality may not be held liable under Section 1983 under a theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). Rather, to establish municipal liability, a plaintiff must show: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)). An official policy may be in the form of written policy statements, ordinances, or regulations. See Piotrowski, 237 F.3d at 579. An official policy may also arise from a widespread practice "so common and well-settled as to constitute a custom that fairly represents municipal policy." Id.

In this case, the Court is unable to locate an official policy or custom, attributable to the Parish, which has been identified by Davis as the moving force behind the constitutional violation against her. For this reason, Davis's Section 1983 claim against the Parish must be dismissed.

**III.     Plaintiffs' State Law Claims against the Parish.[9]**

The Parish also moves to dismiss any and all state law claims asserted against it by the Plaintiffs. See Record Document 40-2 at 6. A review of the Second Amended Complaint suggests that Davis has raised claims under Article I, Sections 2 and 3 of the Louisiana Constitution, and La. R.S. § 23:1006 and 51:2242 based on Gavin's alleged harassment, although it is unclear if the claims are specifically brought against the Parish. See Record Document 21 at ¶¶ 19-21.[10]

Louisiana has repealed La. R.S. § 23:1006 and 51:2242. The current state law regarding employment discrimination is found in La. R.S. § 23:301 et seq. However, like Title VII, Louisiana law provides that a plaintiff may sue her employer. The definition of "employer" found in Louisiana's employment discrimination statute is more stringent than the definition provided in Title VII. In Louisiana, an "employer" under the anti-discrimination statute is defined as: "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee *and, in return, giving compensation of any kind to an employee*." See La. R.S. § 23:302(2) (emphasis added). The definition "focuses on which entity pays the employee …" Johnson v. Hosp. Corp.

---

[9]     The Court will not address Davis's state law claims of battery, sexual assault, intentional infliction of emotional distress, defamation, or malicious prosecution because these claims were asserted against the Sewerage District and/or the individual Sewerage Board members, not the Parish.

[10]    It appears to the Court that Davis's claim based on Article I, Section 2 of the Louisiana Constitution (due process of law) concerns her termination by the Sewerage Board, not the Parish, for allegedly failing to follow the proper administrative procedures related to her termination. Accordingly, the Court will not address this claim.
      As to Article I, Section 3 of the Louisiana Constitution (right to individual dignity/equal protection), if Davis has asserted such a claim against the Parish it must be dismissed because the Court has found that the Parish was not Davis's employer, such that any claim for discrimination or lack of equal protection must be dismissed.

of Am., 767 F.Supp. 2d 678, 693 (W.D. La. 2011). As noted above, Davis received her compensation from the Sewerage Board, not the Parish. Thus, the Parish cannot be found to be Davis's employer under Louisiana law.

It is unclear to the Court whether Ronnie Davis's claim of loss of consortium, society, affection and love was asserted against the Parish. See Record Document 21 at ¶ 32. However, if such claims were made against the Parish, the Louisiana anti-discrimination statutes do not provide for the recovery of loss of consortium, or any other derivative claims, sustained by any person other than the direct victim of discrimination. See Narcisse v. Turner Indus. Grp., LLC, No. 11-2659, 2012 WL 1565293, at *7 (E.D. La. Apr. 30, 2012) (citing Salard v. Lowe's Home Ctrs., Inc., 904 F.Supp. 569, 572 (W.D. La. 1995)). Accordingly, any claim against the Parish by Ronnie Davis must also be dismissed.

## CONCLUSION

Based on the foregoing reasons, the Parish's Motion for Summary Judgment (Record Document 40) is hereby **GRANTED**, and the Plaintiffs' Motion for Partial Summary Judgment (Record Document 42) is hereby **DENIED**.

All of the Plaintiffs' claims against the Parish of Caddo are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED**, this 12th day of August, 2021.

                                    *Donald E. Walter*
                                    DONALD E. WALTER
                                    UNITED STATES DISTRICT JUDGE